STORY, Circuit Justice.
The material facts in this case are the same as those disclosed to the court in the case of The Betsey, [Case No. 1,365.] The Abby acted in the character of a salvor, until after the arrival of the Spanish ship, now known to be the Indus-tria, in Huzzy’s sound; when, having ascertained from the proper authority, that the alien duties and alien tonnage would bo payable by the ship and cargo if libeled for salvage, the master of the Abby seems to have relinquished liis claim, and to have co-operated with the Betsey in another enterprise. I say co-operated, for the Betsey and the Abby were lying together in Huzzy’s sound, when the Spanish ship went out to sea in the night; and in the morning, the Betsey was discovered alongside of the ship receiving her cargo on board, and the Abby was in company. It is true, that the Abby had but a very small quantity of the cargo on board; but she had a great part of the sails, rigging, anchors, and cables of the ship. I believe only one barrel of sugar was found on board; but as this is unaccounted for in any other manner, I must presume, that it was taken from the ship. The ship must, on her arrival in Huzzy’s sound, be deemed to have been, to all intents and purposes, in the possession and charge of the master of the Abby and his co-salvors. Her departure in the night, and under the circumstances of this case, was in manifest violation of the provisions of the 20th and 30th sections of the revenue collection act of 1709, [Bioren & D. Laws, c. 128; 1 Stat. 648, c. 22.] There is no reason to suppose, that the master of the Abby was not perfectly conusant of, and a party to, that transaction; and the court must wink very hard, if it did not perceive, that the meeting of the Betsey and Abby with the ship was not accidental, but in pursuance of previous concert. The question then comes to this, whether the Abby was at this time engaged in a trade, for which she was licensed. It is immaterial, whether she had on board one bag or one hundred bags of sugar received from the ship. She was licensed solely for the coasting trade; and if she was then employed in assisting in the unlad-ing of the cargo of the ship, within four leagues of our coast, it was a violation of our laws, and without the protection of her license. The evidence certainly does not lay a sufficient foundation for the court to exonerate her from this imputation. There is a possibility of her innocence; but the conduct of her master has been so extraordinary, and there is such a cloud of suspicion hanging over her, that no court, proceeding with proper caution, can pronounce her to be guiltless. Without, therefore, adverting to the evidence as to the second count, on which I do not feel myself called to pronounce, my judgment is, that-the Abby is forfeited for having been engaged in an illegal traffic. On the facts, therefore, the-decree of the district court ought to be affirmed.
It is, however, objected, that the seizure in this case was actually made in the port of Portland, within the judicial cognizance of the district court of Maine, and therefore, that the jurisdiction of the district court of Massachusetts lias not attached. I accede to the position, that the court below had no cognizance of the cause, if the seizure, on which this libel is founded, was in the port of Portland; for the judicial act of 1780, c. 20, § 9, [1 Stat. 70,] gives exclusive jurisdiction of all seizures made within any district to the district court of such district. Concurrent jurisdiction exists in the district courts of other districts, only where the-seizure is on the high seas. But the objection here fails in point of fact. The seizure was first made about five miles off Cape Elizabeth, and was therefore on the high seas; since all waters below the line of low-water mark on the sea coast are comprehended within that description; and when the tide flows, the waters to high-water mark also are properly the high seas.[3] This is not denied by the claimant’s counsel; but it is said, that the seizure so made was formally abandoned, and a new seizure aft-erwards was made in Portland harbour. It is true, that the Abby after the seizure was permitted to go into Portland harbour, navigated by her own crew, the seizor's crew having been removed by the commander of the revenue cutter. But under what circumstances was this done? There were appearances of an approaching storm; and it was thought best by all parties, that the Abby should proceed to Portland harbour for shelter. The revenue cutter was not manned with an extraordinary complement of men. The master of the Abby voluntarily offered to conduct his vessel into Portland, without the presence of the seizor’s crew; and agreed there to redeliver her again to-the seizor. This offer was accepted; and the seizor’s crew was upon the faith of it withdrawn. Upon her arrival at Portland, the Abby was faithfully delivered to the seizor without any delay or objection. I agree, that if there was an absolute abandonment of the seizure, a new seizure might have become necessary. But to constitute such an abandonment, there must be an intention *28 coupled with an unequivocal act oí dereliction. There is no pretence of such an intention; and looking to all the circumstances, there is as little pretence to suggest, that there was any such act. It is like the case of a capture as prize. It is not necessary, that a prize crew should be put on board to navigate the ship; the capture still continues complete, although the ship be navigated by her original crew, if there be an agreement to this effect, between the cap-tore and the captured. It is quite another question, whether the original crew are bound to navigate her; but if they do consent, they are hot at liberty afterwards to change the character of that act, by setting it up as an abandonment of the rights of prize. The evidence of an abandonment of a seizure ought to be extremely strong to justify a court in coming to such a conclusion. Tlie presumption of such an intention is here repelled by the whole current of the testimony, as well as by the subsequent conduct of the seizing officer in repossessing himself of the Abby, and immediately instituting proceedings to ascertain and enforce the forfeiture.
[NOTE. The waters of havens where the tide ebbs and flows are not properly the “high seas.'’ unless without tile low-water mark. U. S. v. Hamilton. Case No. 15.290; U. S. v. Smith, Id. 16,337. Inlets of the sea which are so narrow that one may readily discern an object from shore to shore are not properly the high seas. U. S. v. Crush, Id. 15,268.]
yhe question has been thus considered by the consent of the parties, as if the question of jurisdiction were open upon the record. But in strictness, no such question is properly before the court. If the party meant to except to the jurisdiction, he should have filed a declinatory allegation, in the nature of a plea to the jurisdiction. But here he has applied to the court for, and obtained a delivery of, the property on bail; and the very stipulation of bail admits the jurisdiction of the court. He lias regularly filed a plea, claiming the property and traversing the allegations of forfeiture in the libel. Upon the pleadings in the cause, the only question put in issue by the parties is forfeiture or not; and the court cannot travel beyond the defence asserted by the claimants. The question then of jurisdiction, not having been put in issue, cannot be properly in proof before the court; for the proof must be according to the allegations; and no party can be called upon to establish, what is not drawn into controversy by the allegations. Nor is tliis a mere matter of form; but a substantial and important doctrine, regulating the essential rights of parties. If a plea to the jurisdiction had been taken in the court below, no delivery on bail would have taken place, until the jurisdiction had been affirmatively settled. If the court below felt itself ousted of jurisdiction, it would have remitted the cause and the property to the district court of Maine. But after a delivery on bail, how is that possible? The party gets possession of the property, without a trial, from the possession of a tribunal, whose jurisdiction he admits as competent to bail the property; and as soon as it is withdrawn from the grasp of the court, denies its power to institute any in- ! quiry into the question of forfeiture. It cannot be admitted, that any party can first affirm the jurisdiction, by taking the property on bail, and then turn round and deny the same jurisdiction, when the court can no longer administer effectual relief to the interests of other persons. The party is estopped by his own acts from such a proceeding. A plea to the merits is an admission, that the jurisdiction of the court is well founded; and a decree on those merits cannot after-wards be arrested, unless the defect of jurisdiction be apparent on the face of the record. Whatever is not controverted is presumed to be admitted.
Condemned.

Sir H. Constable's Case, 5 Coke, 107.